Attorney Glasshouser, I think you would like to reserve two minutes for rebuttal, is that right? Yes, your honor. Thank you. Very good. Okay, whenever, again, let's let everybody settle their counsel table, and then you can begin at will. Good morning, your honors. May it please the court. Mr. Meadows' drug conviction should not have increased his guideline range because there is a categorical mismatch between the Georgia definition of cocaine and the federal one. Georgia includes stereoisomers. Federal law includes optical and geometric ones. I'm going to jump in right now, you can see we have lots of questions today. What do you do about the fact that the Georgia Court of Appeals has rejected your view and says, no, they are a categorical, a conviction for controlled substance in Georgia has to involve a drug that's on both federal and state schedules? So I don't think that's correct, your honor. There's one mid-level court in Georgia in which all the parties- Mid-level courts are binding on all trial courts in Georgia. There is only one mid-level court, right? It's not like New York where you have four appellate division courts, like first department, second department, you can have a circuit split. It's binding precedent, right, on everybody except the Georgia Supreme Court. So how do we ignore that? Or do you disagree about that? So your honor, you're talking about the case in which all the parties and the court below, everyone agreed, consented, that in that case, that was how they read the statute. Nobody contested it. But the Georgia Court of Appeals said the parties, whatever it is, the government, whatever. Sort of something that complimented them is sort of like, sensibly enough, they concede that, and we agree. This was not a stipulation saying we don't need to rule because the parties have settled their case. They say the parties agree on something, and we do too. If we say that, that's our holding, right? Your honor, I don't agree, respectfully. So that case was about- The Georgia Court of Appeals said, in a case where everybody agreed, that they also agreed that marijuana was not going to be a reason to take a baby away from their mother. That is what that case is about. Well, that's the effect of it. But they said, marijuana is not a controlled substance, as defined by that section. Therefore, I mean, there's a legal holding in that case. Your honor, so that mid-level Georgia case, regardless of the structure of Georgia courts, is not something that is binding on this court. So let me ask you this. If it were from the Georgia Supreme Court, would it be binding on us? If in a similar circumstance where nobody is arguing anything about what the word and means? And they hold it anyway. They say, happily, the parties are in agreement, and we are too.  Hang on, back up a second. I'm at a different level. If the Georgia Supreme Court issues a holding, let's put aside CW. If the Georgia Supreme Court interprets one of its statutes, are we bound to follow the Georgia Supreme Court's interpretation of its own state statutes? Yes or no? Well, I think, generally, yes. Here, it's a little bit complicated, because there are also timing issues, and the Second Circuit considers the categorical approach different than, for example, the Eleventh Circuit. So it is a bit more complicated than Your Honor is asking, and it is not the Georgia Supreme Court. No, no, no. I know. That's why I asked how hypothetical. You're telling me if the Georgia Supreme Court said that one may not be convicted in our state of this crime unless the drug is on both the federal and state schedules, you're saying that we would not have to defer to the Georgia Supreme Court's interpretation of its own statute? No, I think you would. Okay. We got that. Now the question is, we have Georgia Court of Appeals, the intermediate level. Under Georgia law, as far as I can tell, there's an actual rule that if it's a Georgia Court of Appeals decision in which all three panel judges fully concur, it is binding precedent. It's not binding on this court, Your Honor, first of all. Well, it's binding on all of Georgia, on everybody except for, what, the Georgia Supreme Court. You're saying we wouldn't defer to it. We'll just say that every court in Georgia has to follow that rule, but we will read Georgia law differently? It would vastly surprise me if the Georgia courts are reading that civil decision as binding them with respect to criminal prosecutions in Georgia. So let me ask you this. If we were to interpret a statute in one of our many immigration cases and say the New York drug laws mean X, and it has certain consequences in our federal immigration cases, and if the same question of how the New York drug laws are interpreted were also determinative of how we decide a criminal case, would you say that our precedent interpreting the New York law in the immigration case is not also binding? We could interpret the New York law in a completely different way in a criminal case? Your Honor, you're asking if the court did an interpretation of the law, which I respectfully bet Georgia court did not. No, no, just stick with my hypothetical. Sure, yes. I obviously would argue if it supported my position that that controlled, but that is not where we are here. That one court, which has not been cited by any other court anywhere, the case that you are talking about. If nobody cites it, it's not precedent? That's how precedent is measured? Whether somebody's cited it later? I mean, I'm sure we've written some panel opinions that I've written, and nobody's ever cited them. They're published. Are you going to suggest that because nobody ever bothered citing my opinion, it's not precedent? Your Honor, it's not precedent on this court, first of all. Back up to my question. You're suggesting that if nobody ever cites a precedent, it's not binding? How is that a relevant determination of whether something is binding precedent? As I understood Your Honor's question, you had asked if all of Georgia courts and prosecutors can only prosecute people in Georgia if their drug conviction meets both the federal schedule and the very complicated Georgia schedule, which would make the entire Georgia schedule a total waste of time and complete surplusage. If everyone in Georgia had to do that, I understood your question to be, why don't you? Well, it's not surplusage because it can narrow. I mean, you've got to satisfy both. So let's say Georgia doesn't like the federal schedule. They adopt a narrower schedule, like here. They don't want people being prosecuted for marijuana, so they create their own schedule. It narrows one's culpability compared to if Georgia adopted the federal schedule wholesale. So how is it surplusage? But then it would just need the Georgia schedule. Then the federal schedule would be surplusage, Your Honor. Maybe they want to be sure that nobody in Georgia can be prosecuted if it wouldn't be federal. Maybe they think it's only fair that people should only go to jail for controlled substances if they would also be potentially liable in Kentucky for that, too. They want to make sure that nobody in Georgia is going to jail for something they couldn't go to jail for in a federal court somewhere. I don't know why Georgia picks it, but they did. It didn't, Your Honor, and that is an illogical— So CW is wrong. CW does not analyze this. So if Your Honor wants to interpret the party's agreement and the court's then agreement with the party's agreement without any discussion of it, then yes, I would say that is wrong. I don't think there is any reading that makes sense to read the word and in the statute as meaning both. The logical reading is that it means these are some of the drugs that you can be convicted of, and here are some other ones that you can also be convicted of. That is how the Georgia courts have been looking at this except for this one civil case. I want to jump in and change gears, but it does involve other courts. The Sixth Circuit in Wilkes and the Eleventh Circuit in Chamu. Would we be creating a circuit split of sorts, at least analytically? I understand you're going to say one involves a Michigan statute and the other involves a Florida statute, but would we be creating a circuit split if we would end up citing for you? No. If you could tell me why and explain why it's analytically different from both of those. Yes. So the Eleventh Circuit, there already is a circuit split of sorts with respect to the reasonable probability test. So in Chamu, the court accepted the expert reports that there were three kinds of stereoisomers, just like we argued below and our expert explained below, and the government hasn't disputed that factual point. So that's the point that's relevant to your honors in this case, that that court recognized the three different kinds of stereoisomers. It didn't find for that defendant because of the reasonable probability test, which this court already interprets differently. The Sixth Circuit is a bit different. The Sixth Circuit, there are different arguments raised by the defense. They are not raising the argument we are raising here, and the court did not contemplate the argument we are raising here. I think your honor is correct that my argument, the defense argument here, has a bit of a different tone as far as the argument about the umbrella term about stereoisomers and what are chemists said. And that is true across the board, across courts. Researching this issue, as I'm sure your honors have noticed, courts have different opinions about chemistry and what the right chemistry is. And so this wouldn't be a circuit split. It would just be this court ruling on the facts in this case as presented to this court. Our defense expert, who was a renowned scientist, submitted a clear and unrebutted factual affidavit explaining stereoisomers is this umbrella term that includes the two pieces in the federal law, optical and geometric, and also includes a third piece, conformational. That expert included a diagram of conformational isomers of cocaine, and then the expert explained when you would expect to see those kind of isomers, and it's when the cocaine is not pure. The government has never disputed that that is scientifically correct, and this court should then feel confident relying on it, just as the Shamu court did in the 11th Circuit. The reason that that should mean that Mr. Meadows wins here is that this court has explained that when doing the categorical analysis, if the statute on its face shows the mismatch, here that's between stereoisomers and optical and geometric ones, no more is required. Then the statute is overbroad, and Mr. Meadows should not have received those extra points. Okay, can I move on to 922G1 argument? So there are a bunch of those cases in our circuit. My understanding is that this court has taken two approaches. One is to find that there was no plain error because the law is in flux, and the other is to wait and see. Is there any reason why you think this case should not, or is different enough from the other cases that it doesn't fall under one of those two buckets? Well, I would urge your honors not to wait and see, as Mr. Meadows has already served above the bottom of the guideline range that we think is correct, so waiting for him would mean that he would not be able to have the benefit of our sentencing argument. Well, the problem is we generally have other cases pending in this court where our panel is basically stuck in a queue. We have to wait for the panels that have precedence over us to decide that issue. If the 922 question is pending before another panel, they get to decide it first, but we have to wait. We can't really skip the queue and decide ahead of them. Well, this court has been deciding some of these cases. My understanding is that everyone we have decided has uniformly concluded that there was no plain error, so that is why I'm giving you the opportunity to tell us if there's something different about your case that makes it not be in one of those two buckets. I appreciate that, Your Honor. This was not raised below, so it is in the plain error context. It is sometimes hard from summary orders to know exactly what was raised by the parties. I do think Mr. Meadows' case is a little different as we're raising the facial and the as-applied challenge here, but I candidly am not sure what the situation was with the other defendants. Excuse me? I'm sorry, do you have his estimated release date? Yes, it's coming up, Your Honor. It's in 2025. Okay, that's fine. We don't need particulars. That's fine. It is November of 2025. I have a question just so that we can say afterwards the question was never raised, and that is that the special condition of supervised release that refers to a search of electronic devices and communications, which nowadays, looking around, that's an extraordinarily broad variety of things that the court can just kind of walk in and take a look at. It's the widest conceivable variety of digital. And my question is, is that something we should worry about? And if so, is it something we should do something about? And if so, what? Yes, Your Honor, certainly. You should strike that condition. So Your Honor is completely right that it is an extremely broad condition. It allows a search of all electronic communications, and it uses a lot of different words to make sure it's all covered. Data storage, electronic data storage, electronic devices, computers, and it's a very broad search condition. Here, there was no individualized assessment that this was necessary for Mr. Meadows, and there's absolutely no indication on the record that it is.  Just to clarify, along those same lines, are you challenging only the component of the search condition that relates to electronics, sort of writ large, whatever the things are in the category that are electronic, or the entire search condition, including property, home, person, vehicles, whatever? The entire search condition. The electronic portion of it is the most egregious. It's the most obviously overbroad and not narrowly tailored to Mr. Meadows, but the entire search condition is not warranted. Would it be possible for us to agree with you as to one and not the other, in terms of your— Of course, Your Honor. Yes, it's certainly possible. I mean, would it be logically consistent if we said, oh, it's electronic, it's terrible, and we have to agree with that condition? But that's all of a sudden. That is certainly something the court could do, and I would urge you to at least take that step, because of the reasons that Your Honor explains. But the entire condition is not explained by the court. It's not even articulated by the court. The court just says a reasonable search, and then it's written later, the full condition in the judgment. It's not tailored to Mr. Meadows, whose gun possession was not only just a simple gun possession, but he had abandoned the gun outside. So it's not— Well, that's a little strong. He put it on the wheel, and he walked in. We don't know whether he meant to come back and get it. You say abandoned, but that's— Well, that's what Your Honors would say if I tried to suppress the gun. You'd say he abandoned it. So that's why I used that word. I would say that. But that's correct. That's what the law would say. My instinct is he stashed it. I mean, this is such a common thing. People put it on the wheel well, and then they come back and they grab it later. I mean, I don't know. Sure. I don't know what he was doing with the gun. He just put it there, whether he was coming back or not. I didn't know that there was evidence one way or the other, because they just arrested him in the meantime. Right, because they found the gun outside. So this is not a circumstance where anything about the crime itself justifies a search of the home, the person, property, any of those things. Or maybe a wheel well of his car. There's already a standard. I was just going to say, as the president of Manhattan for a long time, I have to admit, I'm going to have to look up where a wheel well is. It's on top of the tire. He just puts it on top of the tire under the fender. Not that I stashed things there. Can I ask you, though, one additional question? I know we're keeping you up here, but thank you very much. It's very helpful. One other issue I would like to address, and I don't know if maybe Judge, well, actually, Judge Parrish, you have something? Yeah, I do, but I can go after you. Okay. The argument the government makes that we don't really need to read the guidelines, reach the guidelines issue because the district court indicated that it would have reached the same decision anyway. And it seems that everyone would agree that if a district court clearly says that in a case and says, look, I don't need to resolve a disputed guidelines dispute because I can tell you that if it applies or if it doesn't apply, I would nevertheless reach the same sentence after considering all the 3553A factors. I understand your argument to be that here, though, the record is not clear enough that that was the court's intention. Is that accurate, or do you also contest the predicate that I just outlined? Do you challenge the notion that a district court can nevertheless say, hey, I don't need to resolve this. Even if I'm wrong about guideline A, I would impose the same sentence anyway. I'm sorry. That was similar. If you don't mind folding into that where Seabrook fits into all of this because my understanding of Seabrook is that a district court can't just tack on a sentence that says I would have done the same thing no matter what. That doesn't insulate them from review. So why is this record one in which they didn't actually mean it as opposed to just a perfunctory analysis? Right. I think that this case should be an easy one on that matter for the court because the judge does not make a clear statement that in the court's view it would be the same. The judge said, I think. And that's fine. And that softened it enough. You think the I think injected enough uncertainty that we can't say with absolute confidence or whatever sufficient level of confidence what the court would have done otherwise. Right. The court didn't even say it with confidence. And that makes sense because all of our law about the guidelines are that the court must calculate the guidelines correctly because that is the starting point of sentencing. And here, when we look at what the sentence actually was, it seems extremely tied to the guideline range the court found as she sentenced just above the bottom of the guideline range. I would just say I would be the first one to expect district courts to explain their reasoning, but I'm wondering if perhaps you're giving short shrift to another thing that the judge said that I want to hear how you would respond. If I felt it was important for me to adjourn the sentence to give further consideration to what the guideline range calculation should be, I would do that without any hesitation. Doesn't that cut a bit against the I think or the tentativeness of the I think? And if not, explain why, please. I want to make sure I understand Your Honor's question. You're asking does that shore up her? My understanding is that you think that this gets review like Percy Brook because the I think transforms it into a not thoughtful, not intentional, not justified explanation of why it would be the same. That might be right if it's all of what the district court said, but given that they also said if I felt it was important for me to adjourn the sentence to get further consideration to what the guideline range calculation should be, I would do that without any hesitation. Why doesn't that add what is needed to the earlier sentence? Understood, Your Honor. So I think the comment about whether an adjournment was necessary in the context of the discussion that happens after the parties are discussing the pretty lengthy submissions that were submitted on time but very close to the sentencing date, that that indicates that the judge had enough information to make a decision, that it wasn't necessary to have an adjournment or further briefing, that the court had read the submissions, understood them. So if they did that, then isn't that enough to conclude that it wasn't just a perfunctory get out of jail, I would have done the same thing anyway, but actually something thoughtful? Yes, Your Honor. I think it was something thoughtful. I'm not suggesting that the court sort of flippantly decided the guidelines. Okay. Well, then why is not the error harmless then, I think is the question. Because if the judge would have done it anyway, would have given the kind of sentence irrespective of the guidelines, I thought the argument was going to be this was just done so cavalierly, this is in the line of cases where we say you can't just get away with saying I would have assigned it anyway. But you just conceded, or at least I thought I heard you say, that there was a thoughtfulness and an intentionality on the part of the district court when issuing this. I think that perhaps I'm misunderstanding, Your Honor, and I apologize. But as I see it, the decision, the court makes a decision on the guideline range. This isn't a situation of which there are some where the court says, oh, well, it's a close question. I'm not sure what I'm going to rule on the guidelines. But given I already have an idea from the 3553A factors what I'm going to do, I'm going to rule for this party and then proceed with sentencing. My sentence will be the same either way. That's not what we have here. The court considered the guidelines as the court is required to do, issued a ruling, and then the sentence that was ultimately given was very closely tied to those guidelines, which were based, in our view, on the wrong sentencing range. So I think at the end is explaining, as I see it, and as normal speech makes clear, that I think I would reach this same decision had I decided differently on the guidelines. But I don't know, because I am not thinking about that right now. The judge, as the judge should do, is thinking about what is, they decided the guidelines and then decided the appropriate sentence. The reason that the Supreme Court has said that it is an unusual circumstance when a guideline error doesn't result in a resentencing is because the guidelines do anchor the courts. That's what they're designed to do. Well, but now the Supreme Court, and we have said that, a district court that is operating thoughtfully and deliberately can say, I need not resolve a certain guideline issue or I can say that even if I went the other way with the guidelines on a particular enhancement, I would sentence you to the same thing anyway because the guidelines, even though you say they have an anchoring function, which, of course, is correct, they're only now one of many 3553A factors. And if the court says, look, I get it. The guidelines may tell me X or Y, but I'm looking at the other 3553A factors and those factors weigh much more heavily in my considered decision making. Seabrook certainly doesn't say that. I have not seen the court say that. That's a case where the court kept coming back and back and back and talking about the guidelines, the guidelines, the guidelines. But if a court explicitly says, look, the guidelines don't really capture this case, I've got better anchoring for my decision. The court doesn't say that, though. So to that point, then, can I ask you this? In terms of remedy, let's say we agree with you that there is some ambiguity about whether the district court really was saying, I would impose this either way for sure. I would impose this even if I'm wrong as the guidelines calculation. Would it be proper in your view for us to do a Jacobson remand and just ask the court and say, hey, we're not entirely sure? Did you mean that you 100% were going to impose this sentence even if you got the guidelines wrong? No, Your Honor. So that is not what this court has done. So why not? Because that's not the appropriate remedy. And the Supreme Court has said that it is an unusual circumstance when a procedural error, and that's what a guidelines error is, it is not a 3553A error. It's a procedural error to miscalculate the guidelines. When there's a procedural error in the guideline calculation, we remand for a new sentencing. And that makes sense. I'm not sure what a Jacobson remand would accomplish here. This is a sentencing. If you remand, the judge should remand. But that was the whole premise of our decision in Crosby, is that every district court by definition prior to Booker was engaging in a procedural error of treating the guidelines as binding. And we gave every single one of those people, a Jacobson remand to say to the district court, would you have imposed a materially different, non-trivially different sentence? And only then did we figure out whether there's going to be resentencing. So we said that even with the procedural error, and every post-Booker appeal, immediate post-Booker appeal, every one of them by definition had a procedural error. We started with a Jacobson remand. So I apologize, Your Honor, because Crosby was before my time practicing in federal court. So that may have been different. When there was a huge volume of people that were having the same problem at the same time, the court's most more recent case law, like Seabrook and the other cases cited in our brief, are not doing Jacobson remands. They are reversing, sending back for a new sentencing, and that's what should happen here. Okay. Thank you. We've kept you up considerably. Thank you, Your Honor. Thank you very much. This is very helpful. And we're going to see you again shortly. Thank you. Why don't we hear from the government? Good morning. May it please the court, William Kinder of the United States Attorney's Office for the Southern District of New York for the government. I represented the government in the district court as well. I'd like to start where the court started with its questions, which is the government's view that we think is correct, that controlled substance under the relevant statute of conviction means a substance that appears both on the Georgia and federal schedules. The CW case answers this decisively. In CW, the court clearly said if a substance is on one but not both, it is not a controlled substance under the relevant definition that applies in this case. It is absolutely on point for, I think, the reasons that Judge Nardini's questions got at earlier. I want to point out a couple other parts of this argument. We disagree with the argument that this formulation creates surplusage, and that is evident in a couple of places. One of those is that the Georgia legislature made a determination that for purposes of the trafficking statute, different statute that involves higher quantities of drugs, that they would refer only to the Georgia schedules. The Georgia legislature made a determination for a reason that it was going to take control back over what drugs they can prosecute when it comes to the higher level offense of trafficking. Here we have the possession with intent to distribute statute. CW, we think, absolutely controls here. Another point picking up on the prior discussion is that we think that the agreement by the Department of Family and Children's Services in Georgia, the CW, the ALJ, and the Georgia Court of Appeals, helps our argument significantly. It makes clear, look, it was so clear that everybody agreed. Well, I mean, it seems to me that regardless, it is always nice to know what the parties agree, but the court has to decide. For example, both parties have agreed here that the drug treatment condition is improperly imposed, right? But we're the ones who have to decide whether or not you guys are right. So we're going to be the ones to either order that that go away or not, and it's presumably if we do agree with you, that's because we think that's the right answer, not just because you somehow settled the case. We don't generally let criminal judgments be modified upon stipulation of the parties, right? That's something we order. That is absolutely correct, Your Honor, and that is exactly what the Georgia Court of Appeals did. It's kind of an intriguing question. This was not decided by the Georgia Supreme Court, by the Court of Appeals. As I said, I was looking at the rules of the Georgia Court of Appeals provide that a Court of Appeals decision is binding precedent, but it's not binding on the Georgia Supreme Court, right? I've not researched the relevant rules, but my instinct is that that would likely be correct. So let me ask this. You know, it may be binding on some of the courts, but does that just mean it's persuasive authority then and not because, you know, I don't know, next year the Georgia Supreme Court could get another case and say, no, that's all wrong. So do we really only have sort of an interim word on what the statute means? Maybe it is persuasive for any of the number of reasons that you suggest. Maybe it is even binding on the lower courts, but the bottom line is it's not binding on every court in Georgia, assuming that it's not binding on the Supreme Court, which I think is a safe assumption. So are we at the point of it just being basically persuasive or maybe pretty persuasive authority? Your Honor, I think I would characterize it as highly persuasive authority. Better than persuasive. I mean, it is an appellate court in Georgia. The case decision that we have interpreting this question that says clearly to be a controlled substance, it needs to be on both schedules. Because of both that and the statutory text and context, it is the correct answer and the court, I think, can and should defer to it. If you could turn to the question that I think Judge Perez was following just earlier, the question of do you think that we need to even reach the question about the Georgia statute in light of the disreport's comments at sentencing about not needing to adjourn the sentencing because she thought that the various 3553 factors militated in favor of the sentence or do you think that there's enough ambiguity here that we just can't say that with any sufficient degree of confidence? Judge Cote was absolutely clear that the sentence under either guideline's calculation would be the same and therefore we have a clear case of harmless error. Let me back up because I think we fundamentally disagree with Meadows' characterization of the sentencing proceeding in a number of ways that I think get at Your Honor's questions. This sentencing proceeding happened against the backdrop of three days earlier, Meadows making known the nature of his guidelines dispute and one night, the night before the sentencing, disclosing for the first time the expert declarations at issue. Judge Cote began the proceeding with asking for a presentation from the parties on the guidelines issues. She then moved on to what is going to be the appropriate sentence. And as Judge Perez asked, what she did was she said, if I thought, and I'm paraphrasing, if I thought I needed more time to address the guidelines calculation, to think about the guidelines calculation, I would not hesitate to adjourn. And that was a reference to the disclosure the night before of the expert declarations. What she was in fact saying is, but it doesn't matter, and she goes on to say, because under either guideline's calculation, I think the sentence would be the same. And I think is not, in this context, an expression of uncertainty. It is an expression of what she thinks about the issue, what she was saying in context, and we think if you look at the full record, this is clear. She was saying, here's what I think, the sentence will be the same. And I point, Your Honors, to the Supreme Court's decision in Molina-Martinez, where they're describing when a guideline's error can be harmless. That's the phrase the Supreme Court used. I'm quoting, the record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the guideline's range. You're saying I think is not an expression of uncertainty. It's an expression of the manifestation of the court's thinking. Exactly, Your Honor. I am telling you what is in my mind, not that I am somewhat dubious about what I'm about to say. That's exactly right, Your Honor, and that is further reflected in Judge Coates' reasons for the sentence. She goes on to talk about the reasons for the sentence being deterrence and the nature of the conduct. And she calls it noteworthy that Meadows had served three years and five years probation terms, or had been sentenced to those terms, for prior firearms offenses. Making clear that she was focused on deterrence. In the Seabrook case, what we had was the district court saying, returning back to the guideline's numbers and framing the appropriate sentence. Well, is there a number? I mean, I'm trying to count how much time the guidelines were referenced in this case for us to know which land it is. And I know you're going to tell me that there's not a number. But I'm also troubled by the . . . of course, I must consider the sentencing guideline range. The rest of the sentencing procedure will have to be based on the guideline range. I mean, there were a bunch of places that suggested that the guidelines certainly played an important role in there. I mean, what would be the government's position on us trying to get it right and to understand what the district court . . . getting more clarity from the district court as to what was intended? Your Honor, I think the record does not . . . Did you just say anything? Well, so this goes to . . . this, I think, establishes my point. I'm not saying I think in an uncertain way. I'm making an assertion that the record supports a clear harmless error here. What Judge Cote did was, of course, she made a decision on the guidelines and then she referenced that I must consider the guidelines. That's true. But then she moved on to describing the conduct and the need for deterrence. And she's not referring back to the guidelines numbers. And so there's not a reflection in Judge Cote's discussion of the appropriate sentence of anchoring the way there was in the Seabrook case or the Bennett case. Can I ask you just to opine on what, if any, guidance Wilkes or Shamu give us? Your Honor, I think, first of all, Shamu is a case where the courts . . . are part of the ordinary meeting. They said, even if that's true, Shamu doesn't win because there's no realistic probability of prosecution. I think what those cases reflect generally, and this goes to our position on Dr. Garg's declaration, is that there was enormous uncertainty in the terminology of stereochemistry at the time that this statute was being enacted. The courts that have talked about stereoisomers describe things differently. Dr. Dudley, the other expert . . . So your position is that we're stuck with what the definition . . . what the contemporaneous definition was at the time. That's right. And Dr. Garg's declaration makes no attempt to determine or opine on what stereoisomers meant at the time. And because of the ambiguity . . . But that's sort of weird though, right? Because isn't the idea of a statute that is able to exist for the future? I mean, that it's able to exist knowing that the situation would change, and when the situation changes, then you go back and get the legislature to update or modernize? That may be right. We're not conceding that Dr. Garg's view of stereoisomers is correct. No, I know. I mean, I'm asking, like, are we in a position . . . Are you asking us to find that we are stuck with whatever the contemporaneous understanding of the language was when it was enacted? Is that the government's position? I think the question is, what was the understanding of the term stereoisomers, parentheses, optical isomers, by the enacting legislature in 1980? Dr. Garg doesn't talk about that. Okay, so I just want to be clear. You are saying we are stuck with the 1980 understanding of the three words at issue? Yes, Your Honor. And how does that square with the idea that legislation is supposed to live on beyond one year, and that there is a mechanism when people think that the legislation hasn't kept up with the times that they can go back and get it modified? Respectfully, Your Honor, I think that the inquiry is, what was the text . . . What do the statutory text and context say about the understanding of the terms by the enacting legislature? And to the extent that any terms become outdated, the Georgia legislature can update its statute. Can I ask, just to understand your argument on this point, let's assume that the parentheses, optical isomers were not in the statute, just for the sake of simplifying our argument, and the term is just, whatever it is, stereoisomers. Is it your position that at the time of the enactment of the statute, scientists generally only knew about two forms of stereoisomers, and later discoveries that there were more kinds out there cannot relate back to the definition of stereoisomers? Or is your argument that everyone knew about the . . . Whatever it is. I'm going to get the . . . Is it conformational isomers? Everyone knew about them, but thought they were not stereoisomers at the time. Which of those is it? I think it's certainly not the second, and I would characterize it a little bit differently. There was, as the Patent Trial and Appeal Board put it in one of the cases we cited, tremendous ambiguity and imprecision in the terminology in stereochemistry at the time. And so, if the word was just stereoisomers, I think our argument would be that that term is ambiguous on its own, and then we would get to the realistic probability test, where Dr. Garg and Meadows do not point to a single case where anyone has been prosecuted for conformational isomers. We think there is sufficient reason to doubt that conformational isomers exist, are known to exist in the real world. We think Dr. Garg . . . So you're saying that there's a manufactured third category that is being used to try and get folks in a better position for sentencing? Correct. I think the correct reading of Dr. Garg's declaration and the submissions here is that this is precisely the impermissible legal imagination that the realistic probability test is designed to prevent. So you have this prior argument that the parentheses is in fact a definition that narrows it, and then you have a prior argument that no matter what, however, they . . . you know, Georgia statute can include potatoes for all we care. C.W. says it's got to be on both schedules to be prosecuted under the statute, so that even if the allegation is, look, these other kinds of isomers are listed on the Georgia schedule and potatoes are listed on the schedule, he couldn't have been prosecuted on that because neither one is a possible predicate for that particular Georgia crime. That's right. The C.W. argument is our first. The optical isomer is our second argument, and I'll just very briefly say, because I didn't get into it previously, we think the statutory text and context, not just the parentheses optical isomers, but elsewhere in the statute, supports the notion that Georgia knew how to make a parenthetical illustrative when it wanted to, and it did not do so in this case. Can I ask you to just address the question Judge Sackett asked your colleague on the other side about the search condition, particularly with regard to the electronic devices? Would you mind addressing that? Of course, Your Honor. Meadows was convicted not only of three prior firearms offenses, but also multiple narcotics offenses. In today's day and age, drug trafficking, I think it's fair to say, necessarily involves working with co-conspirators and almost always involves, in today's day and age, using electronic communications. Your position would be that if you have any trafficking position, electronic, by definition, per se, electronic searches are going to be justified? Your Honor, I think what this court has done is to say, in cases where there are electronic communications as part of the underlying offense, an electronic search condition is justified. And I want to emphasize here that the condition we're talking about is a reasonable search condition. It requires reasonable suspicion to believe that there's been a supervised release violation, and the search must be conducted at a reasonable place and a reasonable time. Does the reasonable suspicion also have to tie to the thing being searched, just like a regular search warrant would be? What's your interpretation? Let me give you a hypothetical. Let's say the probation officer has reasonable suspicion to believe that the defendant threatened someone with a gun on the street corner last night. So let's posit that there's reasonable suspicion of a probation violation. The probation officer visits the defendant at his home. In your view, does he need to have now reasonable suspicion to perform a search of whether the house or the car or the electronics or whatever? Just like with a search warrant, you'd have to have not only probable cause of a crime, but also of the thing being searched. What does the reasonable suspicion link to? Is it both components, what you did and where you're going to search? I understand Your Honor's question. It's not something I've thought about previously. I think in the context of supervised release, a defendant or a supervisee has less of an interest in privacy, and so the reasonable suspicion may extend broader than in the normal context. So I think that's my reaction at the moment. In today's world, which I barely understand, I'm talking about digital communications covers an enormous amount of ground. I think that's right, Your Honor. And in some respects, that goes to our point that someone who has engaged, as Meadows has, in criminal activity repeatedly, repeatedly since 2013, there is a reasonable relation between the electronic search condition and the search condition more broadly. You keep using the word reasonable relation. Is there somewhere in the record that said that he used an electronic device to perpetuate any or to perpetrate any of the narcotics trafficking that you think justified? Because otherwise, then I think we're back to my original question. Is it just a per se rule that if you have a drug trafficking offense, you're going to get an electronic search?  There is not a record reflecting electronic communications in connection with Meadows' drug convictions. However, the analysis here is two parts. First, was it plain error for Judge Cote to impose the search condition on a defendant who has the criminal history that Meadows does? And second, the 7583D factors ask, is this condition reasonably related to, among other things, protection of the public and deterrence? And we think in light of this, Meadows' criminal history, it's absolutely clear that it does reasonably relate. So let me just back up if I could. In terms of how we're framing the analysis, you started by saying it's plain error because it wasn't preserved. No objection was made in the district court. And we know from the Supreme Court that means that the burden shifts to the defendant to show each of the four components of plain error, right, which would include both that this was error. And I assume since the standard is you can only impose this condition if it's reasonably related, it's up to the defendant to establish that it was not reasonably related, right? How do they not, at least I'm not pronged, how does the defendant not satisfy that by showing the record to us, I suppose it would be the PSR, the sentencing transcript, and saying there's no mention in here of anything electronic? Your Honor, I think this court has held in sufficiently comparable context the Ettinger case and the Thomas case, which both talk about the importance of deterrence and protection of the public, that Meadows cannot establish clear error here. And I would point the court to the 11th Circuit decision in Taylor, which, of course, is not binding on this court, but we think is highly persuasive where the court said an electronic search condition is justified when you have a defendant who has a substantial criminal history. Is that going to your second prong, right, the plainness of it to say, OK, let's say that maybe they can get over the hump of saying there's nothing in the record here that shows it's reasonably related. But how obvious is that, that it's a problem? And then you're saying, well, there's no binding precedent from our court saying that's the problem. Electronic search conditions are a problem. And, in fact, the 11th Circuit has said it's not, and therefore absent any binding precedent. But how do you not get back to the basic principle of there needing to be something in the record linked to the particulars here? Or I guess you're saying that there doesn't need to be a link to the particulars. You're saying there doesn't need to be a link to the electronics. I think that's right. And I want to be careful to make clear that I'm not conceding that there has to be evidence of electronic communications in the record for there to be error. And I think this gets at the point in your question at the very end, which is— Does that mean that you're getting to the point of where every time that there's a trafficking offense, then this is a per se appropriate? Like, where are we calculating? I think it is defendant-specific because the— But how can it be defendant-specific if there's not anything in the record indicating the specifics about the defendant? Because the analysis is, is this reasonably related to the sentencing factors? So what have you got besides drug trafficking? I suppose you have recidivism? And so the particular factors that I was just going to state were deterrence of criminal conduct and protecting the public. Those are one step above of what is the precise conviction. So let me understand that. When there's an especially heightened need to deter a defendant from future criminal conduct, and in this case the district court characterized it as dangerous because there are lots of firearms involved, then the court can impose conditions that need not be tied necessarily to the particular facts of the prior offenses, but also are generally going to have deterrent effect on this person. And then you also have the argument that you're trying to suggest that in general with narcotics offenses, one ought to—we ought to presume that as a general rule, one commits them by using electronic devices. But you're saying put those two together, and you don't necessarily need—I don't know if you're saying you need both of those for you to prevail? I think I'm not— I'm mischaracterizing your argument. I think at bottom here our argument is two stages. One, there is no error because the sentencing factors or the supervised release condition factors are, most importantly here, deterrence and protection of the public. We also have the defendant's characteristics. And here we have a defendant who has been convicted on multiple occasions of both firearms and narcotics offenses, who essentially has served a term in prison repeatedly since 2013, gets out, and engages in further criminal activity. And so the search condition, including the electronic search condition, reasonably relates to those higher-level goals of the supervised release factors. And I think that's what the 11th Circuit in Taylor is saying. And then the second piece is even if there is some error there, in light of the case law, there's no clear error. Plain error. I'm sorry, plain error. Only the lawyer would think there's a difference between clear error and plain error. All right, I think we've kept you here long enough. Thank you very much. Appreciate that. Why don't we hear from counsel for the appellant, if there's anything you'd like to add. Yes, Your Honors. Thank you. Going back to where we started with CW, Mr. Meadows' statute of conviction only refers to the Georgia Schedule II substances, which includes cocaine. That is not what CW is about. That's what Mr. Meadows' statute is about, and that's what his sentencing scheme is about. Just Georgia Schedule II. So CW does not apply. Second, with respect to the Court's questions about timing and whether we are stuck with language from the time when the legislature enacted it, no. And this court in Minter recently rejected very similar arguments by the government, which wanted the court to look at the New York state legislature's intention at the time of passing an isomer statute. This court said no. We look to the text. And what the government is saying about our experts' report is also just, it's not correct. The expert cited a seminal study from 1990 about stereoisomers, explaining these three types of stereoisomers. That word, that portion of the Georgia statute, was added in 1988. So although this court is not tied to the definition from then, the expert does speak about the definition from exactly then. Third, with respect to the harmless error analysis, I think is a way to express uncertainty, express equivalency. And it is much less clear than in Seabrook, where the court says that the district court can't insulate its sentence by saying the guideline range made no difference at all. Here, we don't even have such a strong statement. We have a less strong statement. And the record, as Your Honor has pointed out, shows that the court talks about the guidelines repeatedly and that they are an anchor. Finally, with respect to the search condition, to answer Your Honor's question, the language of the judgment does not require that reasonable suspicion be tied to the violation. The reasonable suspicion can be reasonable suspicion that you have failed to get a job or violated one of the more technical conditions of probation, and that can allow a search of your entire electronic life. So it is extremely broad. Mr. Meadows, just as maybe a small point, was not convicted of drug trafficking either. He's convicted of drug offenses, but there is nothing in the record suggesting that he had been engaged in electronic communication in his past offenses. This court, the Second Circuit, has been really clear that supervised release conditions must be individualized, and this court has not hesitated to strike down conditions that are not, especially when, like here, there's no explanation, and the full condition isn't even put into the sentencing record.  Thank you. I think a measure of how helpful your arguments have been on both sides is how long we've kept you up after your red lights went out. This was a beautiful argument that Case and I have said. I have many a case where I might have said something, but I don't think I've ever said it that way. I think the people out there on the streets would be very pleased with you. Thank you, Your Honor. Thank you, both of you. We will take the case under advisement.